**Junea M. Williams-Edmund (JW3601)**
The Law Offices of Junea Williams-Edmund, Esq., L.L.C.
24 Commerce St., Madison Exec. Ctr.
Newark, New Jersey 07102
Tel.: 973-735-0525
Fax: 973-559-6440
junea@williamsedmundlaw.com

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

**JACK J. McELVEEN, IV**

       Plaintiff

v.                                                                            CV_____

**USS CHARTERING LLC, d/b/a U.S.**                    **COMPLAINT**
**SHIPPING CORPORATION, US SHIPPING**
**GENERAL PARTNER LLC, and U.S.**
**SHIPPPING PARTNERS L.P.,**
      Defendants.

                                    **JURY TRIAL DEMANDED**

Plaintiff Jack McElveen, IV ("Plaintiff or Mr. McElveen"), by and through his undersigned counsel, as for his Complaint in this action against Defendants USS Chartering LLC, d/b/a/ U.S. Shipping Corporation, US Shipping General Partner LLC, and U.S. Shipping Partners L.P. (collectively , "Defendants"), hereby alleges as follows:

## NATURE OF THE CLAIMS

1. This is an action for declaratory, injunctive and equitable relief, as well as back pay, front pay, compensatory, nominal, and punitive damages, and attorneys' fees, costs and expenses under Title VII of the of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000(e) *et seq.*, ("Title VII") and the New Jersey Law Against Discrimination, N.J. Stat. Ann. § 10:5-1, *et seq.* ("NJLAD").  Plaintiff requests a jury trial on each of these counts.

## JURISDICTION AND VENUE

2. The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343 as this action involves federal questions regarding the deprivation of Plaintiff's rights under Title VII. The Court has supplemental jurisdiction over Plaintiff's related claims arising under state and local law pursuant to 28 U.S.C. § 1367(a).

3. Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) because Defendants have their headquarters and principal office in Edison, New Jersey.

## ADMINISTRATIVE PROCEDURES

4. Prior to the filing of this Complaint, Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on May 1, 2012 (EEOC No. 461-2012-01109). Mr. McElveen received his Notice of Right to Sue from the EEOC on March 29, 2013 and timely instituted this suit within 90 days.

## PARTIES

5. Plaintiff Jack McElveen, IV resides at 3827 Vernon Street, Metairie, Louisiana. At all relevant times, Plaintiff met the definition of an "employee" under all applicable statutes.

6. Corporate Defendants USS Chartering LLC, U.S. Shipping Corporation, U.S. Shipping Partners L.P. and USS Shipping General Partners LLC are leading providers of long-haul marine transportation services, principally for refined petroleum products, in the U.S. domestic "coastwise" trade. Defendants are also leading providers of coastwise transportation of petrochemical and commodity chemical products. Upon information and belief, USS Chartering LLC has aliases or affiliates called USS Shipping General Partners LLC, U.S. Shipping Corporation, and U.S. Shipping Partners L.P. Plaintiff's pay

checks were issued by USS Chartering LLC. Defendants are publicly traded and incorporated in Delaware. Defendants are headquartered at 399 Thornall Street, 8th floor, Edison, New Jersey. At all relevant times, Defendants met the definition of an "employer" under all applicable statutes.

## FACTUAL ALLEGATIONS

7. Plaintiff is an African-American male and former employee of Defendants.

8. From March 22, 2012 until March 30, 2012, Defendants employed Mr. McElveen as a steward/cook aboard their vessel, *Chemical Pioneer*. Defendants hired Plaintiff through his union, the Seafarers' International Union ("SIU").

9. Plaintiff has over seventeen (17) years of experience working as a steward/cook, including thirteen (13) years working aboard ships.

10. As a steward on *Chemical Pioneer*, Plaintiff oversaw all aspects of meal services onboard, including monitoring food supplies and inventory, developing mealtime menus, and general oversight of ship cleanliness.

11. Defendants initially hired Plaintiff to complete a sixty (60) day assignment on *Chemical Pioneer*, with the option to be assigned to the vessel on a long-term basis.

12. While working on *Chemical Pioneer*, Plaintiff reported to the vessel's captain, T. Doane.

13. Plaintiff's tenure aboard *Chemical Pioneer* was very promising. On March 23, 2012, Plaintiff met with Captain Doane in his office. During this meeting, Captain Doane told Plaintiff the ship needed a new permanent steward, to begin around the October-November 2012 timeframe due to the impending retirement of the permanent steward.

14. Pleased with Plaintiff's overall job performance, Captain Doane advised Plaintiff that after he completed his sixty days, he wanted Plaintiff to return as the vessel's permanent steward.  During this meeting, Captain Doane also shared that Plaintiff was the youngest steward he had worked with.

15. Plaintiff was very excited about the prospect of obtaining a full-time position on *Chemical Pioneer* because he was looking to work on a permanent ship that ran state-side, similar to the *Chemical Pioneer*.

16. Yet, on March 24, 2012, Captain Doane told Plaintiff that he did not know Plaintiff's hair was long.  Captain Doane cited to an alleged company "hair length policy" and indicated Plaintiff's hair length violated said policy.

17. Captain Doane further explained that the hair length policy applied to all crew members aboard *Chemical Pioneer*, requiring all employees to keep their hair no longer than neck length.

18. At no point prior to boarding the ship did Captain Doane or any other representative of the Defendants or SIU inform Plaintiff of or provide Plaintiff with a copy of any hair length policy.  Plaintiff only became aware of the policy once he arrived on the ship.

19. Plaintiff does not know whether or not anyone from SIU was aware of the Defendants' hair length policy.

20. Plaintiff wears his hair in long dreadlocks that extend mid-back.  Dreadlocks area natural hairstyle traditionally worn by African-Americans and others of African descent, pursuant to which the hair is twisted into long, matted or ropelike locks.

21. Dreadlocks are also a key component of Rastafarianism, an African-based spiritual ideology that is often described as a religion but generally referred to as a way of life.

22. Rastafari associate dreadlocks with a spiritual journey, as it requires a great deal of patience to grow dreadlocks. As such, traditional Rastafari do not cut their dreadlocks.

23. Plaintiff's election to style his hair in dreadlocks reflects how he has embraced certain aspects of Rastafarianism. Indeed, Plaintiff has never cut his dreadlocks. Thus, wearing dreadlocks is more than a hairstyle for Plaintiff. It is strongly tied to his belief system.

24. When working, and, in particular, when cooking, Plaintiff maintains hygienic habits by covering his hair in a protective head wrap that covers all of his hair and leaves none of his dreadlocks visible.

25. When Plaintiff initially met Captain Doane on March 22, 2012, his hair was uncovered and pulled back into a single ponytail. Thus, Captain Doane clearly saw Mr. McElveen's hair length; yet, he did not reference any company hair length policy at that time.

26. In fact, Captain Doane had at least two additional opportunities to observe Plaintiff's hair length before meeting with him on March 23rd and discussing long-term job opportunities with him. Thus, it is puzzling, to say the least, why the Captain did not mention the company's purported hair length policy before March 24th.

27. Unfortunately, on March 27, 2012, Captain Doane advised Plaintiff he had to call his union, SIU, to alert the of his hair length.

28. SIU subsequently advised Plaintiff he would be discharged from *Chemical Pioneer* on March 30, 2012 due to his hair length.

29. Notably, prior to his discharge, another long-standing employee informed Plaintiff that two (2) Caucasian employees with hairstyles longer than neck length were previously allowed to work aboard *Chemical Pioneer*. Although these employees held different job titles, the company's hair length policy purportedly covered all employees working on the vessel, including stewards, engine and deck employees.

30. In essence, Defendants have elected when and against whom to enforce their hair length policy, and have done so in a discriminatory fashion.

31. Needless to say, Plaintiff was humiliated by Defendants' dismissal of him, particularly once he learned that other non-African-American employees were allowed to maintain longer hair lengths onboard *Chemical Pioneer*.

32. March 30, 2013 was Plaintiff's final day aboard *Chemical Pioneer*. Despite the circumstances surrounding his dismissal, Plaintiff received excellent reviews for his performance.

33. In light of the foregoing, it is clear that Defendants terminated Plaintiff because of his race, and because he wears his hair in a style traditionally worn by individuals of African descent.

### COUNT I
### VIOLATIONS OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000, *et seq.,* AS AMENDED (RACE DISCRIMINATION)

34. Mr. McElveen re-alleges the allegations in each of the preceding paragraphs as if fully set forth herein.

35. Defendants have discriminated against Plaintiff by treating him differently from and less preferably than similarly-situated employees of a different race, by, *inter alia*, terminating Plaintiff's employment in violation of Title VII.

36. As a direct and proximate result of Defendants' unlawful discriminatory conduct violation of Title VII, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation and benefits for which he is entitled to an award of monetary damages and other relief.

37. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of Title VII, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which he is entitled to an award of monetary damages and other relief.

38. Defendants' unlawful discriminatory conduct constitutes a willful and wanton violation of Title VII, was outrageous and malicious, and intended in injure Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

39. Mr. McElveen is therefore entitled to all legal and equitable remedies available under Title VII.

## COUNT II

### VIOLATIONS OF THE NEW JERSEY LAW AGAINST DISCRIMINATION

40. Plaintiff hereby repeats and re-alleges the allegations in each of the preceding paragraphs as if fully set forth herein.

41. Defendants have discriminated against Plaintiff in violation of the New Jersey Law Against Discrimination by subjecting him to disparate treatment because of his race, by, *inter alia*, terminating Plaintiff's employment.

42. As a direct and proximate result of the Defendants' unlawful discriminatory conduct in violation of the New Jersey Law Against Discrimination, Plaintiff has suffered and continues to suffer financial and economic damages as well as severe mental anguish and emotional distress, including but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

43. Defendants' unlawful discriminatory conduct constitutes a willful and wanton violation of the New Jersey Law Against Discrimination, was outrageous and malicious, was intended to injure Plaintiff, and was done with reckless indifference to Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

44. Mr. McElveen is therefore entitled to all legal and equitable remedies available under the New Jersey Law Against Discrimination.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff for judgment in his favor and against Defendants as follows:

    **A.**    A declaratory judgment that the actions, conduct and practices of Defendants complained of herein violate the laws of the United States and the State of New Jersey;

  **B.** An injunction and order permanently restraining Defendants from engaging in such unlawful conduct;

  **C.** An award of back pay, front pay, lost benefits, preferential rights to jobs and other damages for lost compensation, job benefits, and all other monetary and/or non-monetary losses suffered by Plaintiff, to be determined at trial;

  **D.** An award of compensatory and punitive damages in an amount to be determined at trial;

  **E.** An award of attorney's fees, costs, and expenses;

  **F.** Any other equitable relief to which Plaintiff is entitled; and

  **G.** Such other and further relief as the Court may deem just and proper.

## **DEMAND FOR JURY**

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

        The Law Offices of Junea Williams-Edmund, Esq. L.L.C.

        By: s/ Junea M. Williams-Edmund
          Junea M. Williams-Edmund (JW-3601)

        The Law Offices of Junea Williams-Edmund, Esq., L.L.C.
        24 Commerce St., Madison Exec. Ctr.
        Newark, New Jersey 07102
        Tel.: 973-735-0525
        Fax: 973-559-6440

          COUNSEL FOR PLAINTIFF

Dated:  June 27, 2013